## APPEAL OF W. F. SEVERA CO.

Docket No. 1702.    Submitted October 20, 1925.    Decided February 11, 1926.

Evidence *held* insufficient to establish value of good will.
Additional salaries disallowed.

*W. T. Frame, Esq.*, and *P. L. Billings, E. G. Prouty*, and *I. B. McGladrey, C. P. A.'s*, for the taxpayer.
*Ward Loveless, Esq.*, for the Commissioner.

### Before GRAUPNER, TRAMMELL, and PHILLIPS.

#### FINDINGS OF FACT.

The taxpayer is an Iowa corporation, with its principal office at Cedar Rapids, and is engaged in the manufacture of proprietary medicines.

Upon its organization in 1903, the taxpayer purchased the business which W. F. Severa had operated as an individual since 1880, issuing in exchange therefor its capital stock in the amount of $50,000. The assets taken over by the corporation, exclusive of the good will here claimed, amounted to approximately $41,000. Good will was not shown on the books of Severa, nor has it ever been recorded on the taxpayer's books. About 1908 earnings of the taxpayer were added to its original investment, as shown on its books, which were continued in the same manner as they had been kept by Severa, and by this means its capital was brought up to the amount of $50,000.

The taxpayer has always been a close corporation, its stock being held by W. F. Severa and members of his family and by J. H. Vosmek. In 1918 the directors drew the following salaries:

W. F. Severa, president_____ $6,000
Lumir Severa, vice president and treasurer_____ 3,000
J. H. Vosmek, secretary_____ 3,000

Lumir Severa was in the military service in 1918 and, with the exception of a part of the month of December, was absent from the taxpayer's place of business during the entire year. He was advised by correspondence concerning the business of the taxpayer, and at times he gave his opinions and suggestions in regard to the taxpayer's affairs.

The president and secretary, at an informal meeting held in the summer of 1918, expressed the belief that the salaries then being paid by the taxpayer to its directors, who were also its managing officers, were not in keeping with the salaries paid by other firms, doing a similar kind and amount of business, to their officers. There was no record made of this meeting in the corporate minute book. No definite decision was reached at that time as to any changes to be made in salaries, but the secretary thereafter, in November or December, 1918, inquired of the president of the Proprietary Association as to the salaries paid by other firms. This association is an organization of about 250 of the largest manufacturers of proprietary medicines in the United States. The president of the association informed Vosmek that they had no information on the subject which he was at liberty to reveal, but that the association was then preparing to secure such information in some form that could be made available to members, and that, upon being acquired, it would be furnished the taxpayer.

The taxpayer closed its books on December 31, 1918, without making provision thereon for any additional salaries.

Sometime after 1918, but prior to March 14, 1919, the taxpayer received from the Proprietary Association compilations showing average salaries paid by other manufacturers of proprietary medi-

cines to their principal officers, arranged according to the volume of business transacted and the amount of stock owned by the officers. Upon receipt of this information by the taxpayer, a meeting of the board of directors was held, at which it was decided that, as fair salaries for the year 1918, W. F. Severa was entitled to $12,000 and Lumir Severa and J. H. Vosmek to $6,000 each. On and under date of March 14, 1919, an entry was made in the taxpayer's ledger charging surplus with $12,000, with the notation " correction in salaries of officers compared with corporations in like business and same volume of business which pay to their officers." The same amount, $12,000, was credited to back salaries in a column dated December 31, 1918.

Prior to 1918 it had been the custom of the taxpayer to inventory its manufactured package goods by reducing the selling price by an arbitrary percentage. The opening and closing inventories of package goods for 1918 were taken by this method, but a closing inventory was also taken on the basis of cost. In filing its income-tax return for 1918 the taxpayer reported as the opening inventory the arbitrary figure based on selling price, and as the closing inventory reported the cost figure. It later revised its opening inventory for that year to a cost basis, which was $9,727.60. The Commissioner, as a result of a revenue agent's investigation, reduced the opening inventory to $9,145.25, by application of an arbitrary percentage.

#### DECISION.

The deficiency should be computed in accordance with the following opinion. Final determination will be settled on 15 days' notice, under Rule 50.

#### OPINION.

. GRAUPNER : The taxpayer contends that it should be permitted to include in invested capital as good will the amount of $9,088.90, representing the difference between the value of tangible assets taken over upon organization and the par value of the capital stock issued in exchange for the business. The only evidence directed toward establishing the value of good will was testimony that W. F. Severa had conducted the business since 1880; that the volume of business for 1901 was about $71,000, and for 1902, $78,000; and that the annual profits of the business ran between $12,000 and $15,000. The minutes of the meeting of stockholders of the taxpayer on July 1, 1903, state that the meeting was held to elect officers and " to assume all stocks, moneys and credits, good will and liabilities " of

the business of W. F. Severa. The good will claimed to have been acquired at that time was not entered on the taxpayer's books, nor has it ever been entered. So far as the record shows, no effort was made by the incorporators to determine the value of the good will upon any sound basis; they merely assumed that the par value of stock in excess of the amount determined upon as the value of tangibles acquired must have been issued for good will. This is not sufficient to establish value for invested capital purposes. *Appeal of W. E. Marshall & Co.*, 1 B. T. A. 175.

The principal question for determination on the claim for additional salaries of $12,000 is whether any liability for payment of this amount was incurred by the taxpayer in 1918. The substance of the testimony of the taxpayer's witnesses was that a directors' meeting was held some time in 1918, at which time the question arose whether the officers were drawing proper salaries, and it was agreed that the salaries were to be increased if information could be obtained showing that other firms doing a similar business, in kind and volume, were paying their officers higher salaries than the taxpayer. Certainly such an agreement could not bind the corporation to pay additional salaries. The fallacy of the taxpayer's argument on this question is shown by the testimony of the principal witness, which is to the effect that if it had been learned that other firms were paying no higher salaries than the taxpayer, then the salaries of the taxpayer's officers would not have been increased. The books were closed for 1918 with no entry relating to additional salaries, and it was not until March 14, 1919, that the increase was finally agreed upon and entered and charged to surplus. On the evidence, we must approve the action of the Commissioner in disallowing for 1918 the additional salaries claimed. *Appeal of Ballou & Wright*, 2 B. T. A. 493; *Appeal of Matchless Metal Polish Co.*, 2 B. T. A. 79; *Appeal of Van De Kamp's Holland Dutch Bakers*, 2 B. T. A. 1247.

The method adopted by the taxpayer in valuing its inventories is set forth in the findings of fact. Upon making an investigation of the taxpayer's records, the Commissioner attempted to bring the opening inventory for 1918 down to cost, which was the basis upon which the taxpayer reported its closing inventory for that year. He accordingly reduced the opening inventory to $9,145.25, which increased the income for that year by $3,048.42. The correct amount of the opening inventory on the basis of cost was $9,727.60. This results in a difference of $582.35, and the income of the taxpayer for 1918, as determined by the Commissioner, should be decreased by this amount.