*666 OPINION.
GratjpneR
: The taxpayer contends that it should be permitted to include in invested capital as good will the amount of $9,088.90, representing the difference between the value of tangible assets taken over upon organization and the par value of the capital stock issued in exchange for the business. The only evidence directed toward establishing the value of good will was testimony that W. F. Severa had conducted the business since 1880; that the volume of business for 1901 was about $71,000, and for 1902, $78,000; and that the annual profits of the business ran between $12,000 and $15,000.' The •minutes of the meeting of stockholders of the taxpayer on July 1, 1903, state that the meeting was held to elect officers and “ to assume all stocks, moneys and credits, good will and liabilities ” of *667 the business of W. F. Severa. The good will claimed to have been acquired at that time was not entered on the taxpayer’s books, nor has it ever been entered. So far as the record shows, no efEort was made by the incorporators to determine the value of the good will upon any sound basis; they merely assumed that the par value of stock in excess of the amount determined upon as the value of tangibles acquired must have been issued for good will. This is not sufficient to establish value for invested capital purposes. Appeal of W. E. Marshall & Co., 1 B. T. A. 175.
The principal question for determination on the claim for additional salaries of $12,000 is whether any liability for payment of this amount was incurred by the taxpayer in 1918. The substance of the testimony of the taxpayer’s witnesses was that a directors’ meeting was held some time in 1918, at which time the question arose whether the officers were drawing proper salaries, and it was agreed that the salaries were to be increased if information could be obtained showing that other firms doing a similar business, in kind and volume, were paying their officers higher salaries-than the taxpayer. Certainly such an agreement could not bind the corporation to pay additional salaries. The fallacy of the taxpayer’s argument on this question is shown by the testimony of the principal witness, which is to the effect that if it had been learned that other firms were paying no higher salaries than the taxpayer, then the salaries of the taxpayer’s officers would not have been increased. The books were closed for 1918 with no entry relating to additional salaries, and it was not until March 14, 1919, that the increase was finally agreed upon and entered and charged to surplus. On the evidence, we must approve the action of the Commissioner in disallowing for 1918 the additional salaries -claimed. Appeal of Ballou & Wright, 2 B. T. A. 493; Appeal of Matchless Metal Polish Co., 2 B. T. A. 79; Appeal of Van De Kamp's Holland Dutch Bakers, 2 B. T. A. 1247.
The method adopted by the taxpayer in valuing its inventories is set forth in the findings of fact. Upon making an investigation of the taxpayer’s records, the Commissioner attempted to bring the opening inventory for 1918 down to cost, which was the basis upon which the taxpayer reported its closing inventory for that year. He accordingly reduced the opening inventory to $9,145.25, which increased the income for that year by $3,048.42. The correct amount of the opening inventory on the basis of cost was $9,727.60. This results in a difference of $582.35, and the income of the taxpayer for 1918, as determined by the Commissioner, should be decreased by this amount.